FILED

2009 Feb-17  PM 04:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **M. H. FOX, TERESA BROTHERS,** ) | |
| **and ANGELA HATCHETT** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No.: 4:99-CV-1612-VEH** |
| **v.** ) | **Case No.: 4:06-CV-4676-VEH** |
| ) | **Case No.: 4:06-CV-4677-VEH** |
| ) | |
| **TYSON FOODS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION

Pending before the Court are the Motions for Attorneys' Fees and Expenses in

three related cases which have been jointly briefed for purposes of this fee petition.

*Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH (Doc. 790); *Brothers v. Tyson

Foods, Inc.*, No. 4:06-CV-4676-VEH (Doc. 177); and *Hatchett v. Tyson Foods, Inc.*,

No. 4:06-CV-4677-VEH **(**Doc. 214); *Fox*, (Doc. 795 (ordering a joint briefing

schedule for *Fox*, *Brothers* and *Hatchett*)).  Each of the three cases arose out of a

violation of the Fair Labor Standards Act, beginning as a collective action before

being split into ten cases, one for each of the named plaintiffs.  The Court transferred

the cases of the named plaintiffs whose claims did not arise in the Northern District of Alabama and kept the three remaining cases which are the subject of this Petition. For the reasons discussed below, the Court hereby **GRANTS** the Plaintiffs' Motions for Attorneys' Fees.

## II.   FACTUAL HISTORY

These cases were initially part of a collective action filed in this Court on June 22, 1999.  (Doc. 1.)[1]  As the basis for this collective action, the Plaintiffs maintained that Tyson Foods, Inc. ("Tyson") violated the Fair Labor Standards Act by failing to compensate its employees for the time they spent donning and doffing sanitary equipment. (Doc. 1, ¶¶ 20-28.) In the collective action, the Plaintiffs maintained that Tyson engaged in this practice on a nationwide basis.  *Id.*

Tyson filed motions for partial summary judgment (Docs. 31; 53) on September 24, 1999, and December 27, 1999, respectively.  Tyson argued in part that some of the named plaintiffs' claims were due to be dismissed pursuant to 29 U.S.C. § 203(o), on the ground that the "hours worked" by the Plaintiffs did not include time spent changing clothes or washing at the end of each work day.  Magistrate Judge Putnam issued a Report and Recommendation (Doc. 227) on February 14, 2001, denying the

---

[1]  Since the three fee petitions have been jointly briefed, unless otherwise noted, any references to the court docket will correspond to the numbers used in the *Fox* docket.  Thus, (Doc. 797) corresponds to *Fox*.

Motions, which the Court adopted on February 2, 2002.  (Doc. 354.)

The Plaintiffs in the would-be collective action filed their Motion for Certification (Doc. 34) on October 15, 1999.  The Plaintiffs' attempts to pursue this case as a collective action covered several years and numerous proceedings in this Court.[2]  In its Memorandum Opinion and Order of November 15, 2006 (Docs. 601-602), the Court found that the claims were more appropriate for individual lawsuits and ordered that the claims of the named plaintiffs be severed.  (Doc. 602.)

After the cases were severed, the Court transferred to other districts the majority of the cases.  (Doc. 612.)  It dismissed without prejudice the claims of all persons who filed consents to join the collective action as "opt-in" plaintiffs.  (Doc. 606.)  However, the Court retained jurisdiction over three individual plaintiffs' claims, which arose out of Tyson's activities in Albertville, Alabama.  (Doc. 612.) These cases continued under separate docketing numbers as *Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH; *Brothers v. Tyson Foods, Inc.*, No. 4:06-CV-4676-VEH; and *Hatchett v. Tyson Foods, Inc.*, No. 4:06-CV-4677-VEH.

As the cases proceeded individually, Tyson filed a Motion to Reconsider the Court's denial of its motion for partial summary judgment.  (Doc. 640.)  In light of

---

[2]  The case was reassigned to the then newly-appointed undersigned judge on July 28, 2004.  (Doc. 509.)

the Eleventh Circuit's decision in *Anderson v. Cagles, Inc.*, 488 F.3d 945 (11th Cir. 2007), the Court granted the motion in part, dismissing all of the Plaintiffs' claims for compensation for pre- and post-shift clothes changing activities. (*Fox*, Doc. 659.) The remaining portions of the individual cases proceeded to trial.

The three remaining individual actions were tried before a jury during October and November of 2007.  *Brothers* and *Hatchett* resulted in jury verdicts in favor of the Plaintiffs. (*Brothers*, Doc. 164; *Hatchett*, Doc. 207.)  *Fox* resulted in a mistrial. Tyson made an offer of judgment, including reasonable attorneys' fees and costs, to Mr. Fox.  On March 31, 2008, Mr. Fox accepted the offer of judgment. (Docs. 787-788.)

On December 4, 2007, Brothers and Hatchett each filed their pending  Motion for Attorneys' Fees. (*Brothers*, Doc. 177; *Hatchett*, Doc. 214.)  On April 14, 2008, Fox filed his pending Motion for Attorneys' Fees. (*Fox*, Doc. 790.)

 Tyson appealed the final judgments in *Brothers* and *Hatchett*. (*Brothers*, Doc. 188; *Hatchett*, Doc. 225.)  Tyson subsequently dismissed its appeals (*Brothers*, Doc. 191; *Hatchett*, Doc. 232).  This Court entered an Order adopting a joint briefing schedule for all three cases regarding the petitions for attorneys' fees, effectively consolidating the cases for purposes of the instant Motion. (*Fox*, Doc. 795; *Brothers*, Doc. 195; *Hatchett*, Doc. 231.)

4

The parties have each provided this Court with lengthy briefs and evidentiary material. (Docs. 798, 799, 802, 803, 804, 813, 814, 815.)[3] The Court has fully and thoughtfully considered each of the parties' arguments, and the instant motion is now under submission to the Court.

## III.   LEGAL STANDARD

The most useful starting point for determining attorneys' fees is that "the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "The product of this formula is the 'lodestar,' *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (per curiam), which is 'the guiding light of our fee-shifting jurisprudence,' *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)." *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1219 (11th Cir. 2008).   Excluded from the lodestar calculation are "hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939 (quoting S. Rep. No. 94-1101, at 6 (1976)).

---

[3]  Tyson heavily relies upon the declaration of its expert, John W. Toothman, who performed an analysis of all of the billing records that Plaintiffs' counsel submitted for purposes of this fee petition. (Doc. 803-14, Ex. N.) This thirty-eight (38) page declaration provides the basis for the majority of Tyson's objections, and the Plaintiffs' response to it consumes a substantial portion of its sixty-seven (67) page reply brief.

Following the lodestar determination, the court should then address whether the fee should be adjusted upward or downward and may be guided by the twelve factors described in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)[4] *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), which include the "important factor" of the "degree of the plaintiff's success in the suit." *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (citing *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1940). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the [partial or] limited success." *Hensley*, 461 U.S. at 436–37, 103 S. Ct. at 1941. However, "[t]he Supreme Court has instructed us that there is a 'strong presumption' that the lodestar figure, without any adjustment, is the reasonable fee award." *Perdue*, 532 F.3d at 1220 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

"The abuse of discretion standard applies to the district court's determination of the number of compensable billable hours, the hourly rate at which plaintiffs'

---

[4] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

counsel is compensated, the award of costs and expenses, and the enhancement decision." *Perdue*, 532 F.3d at 1218 (citing *ACLU of Ga. v. Barnes*, 168 F.3d 423, 439 (11th Cir.1999); *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1248-49 (11th Cir.1991)). "In applying the abuse of discretion standard, we keep in mind that '[w]hen a district court has discretion, there are usually a range of choices it may make and still be affirmed; there is not only one right choice for the court to make.'" *Perdue*, 532 F.3d at 1218 (quoting *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1298 (11th Cir.2002); *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir.2001)).

## IV.   ANALYSIS

In accordance with the legal framework set forth above, the Court first looks to the amount of hours reasonably expended and then turns to the reasonable hourly rate.  Following this lodestar determination, the Court will then determine whether an upward or downward adjustment is necessary and arrives at the final attorneys' fees to be awarded.  Finally, the Court determines the type and amount of costs to be awarded.

### A.   Prevailing Party Status

Because the FLSA provides for an award of attorneys' fees only to a prevailing plaintiff, this is a threshold inquiry. 29 U.S.C. § 216(b) provides, in relevant part,

7

"[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." An award of attorneys' fees is mandatory under the FLSA.   *Kreager v. Soloman & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985); *see also Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorneys' fees, as opposed to granting the court discretion in awarding such fees to the prevailing plaintiff in FLSA cases.").   Here, it is clear that each of the Plaintiffs prevailed because judgment was entered against Tyson in each case.  Thus, the Court turns to its lodestar analysis, which is the proper method for determining attorneys' fees awarded under Section 216.  *See Jones v. Central Soya Co., Inc.*, 748 F.2d 586, 591 (11th Cir. 1984).

## B.     Lodestar Figure

### 1.     *Reasonable hours expended*

As a general matter, courts in the Eleventh Circuit determine the reasonable hours expended by "contemplating a task-by-task examination of the hours billed." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 429 (11th Cir.1999). In certain circumstances, this rule should not be followed, since the Eleventh Circuit also directs, "[w]here fee documentation is voluminous, . . . an hour-by-hour review is both impractical and a waste of judicial resources."   *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th

Cir.1994). In such cases, the district court may engage in "across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure," so long as it provides "a concise but clear explanation of its reasons for the reduction." *Id*.; *see also Perdue*, 532 F.3d at 1221 ("a district court could make a reasonable across the board reduction in hours instead of engaging in the pick and shovel work necessary to make a more precise determination.").

> There is a line of cases in this circuit establishing that 'when hours are disallowed the court should identify the hours disallowed and explain why they are disallowed.' *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir.1994) (citing *Norman*, 836 F.2d at 1304). However, we have also recognized that in cases '[w]here fee documentation is voluminous,' it will not be feasible to require a court to 'engage in such a precise review.' *Loranger*, 10 F.3d at 783.

*Villano v. City of Boynton Beach*,  254 F.3d 1302, 1311 (11th Cir. 2001).

In total, the Plaintiffs seek to recover for approximately 4,420.93 hours of work expended in trying the cases. (Doc. 803-14, Ex. N; *see also* Doc. 815 at 5-7.)[5] More than twenty-five attorneys and numerous paralegals devoted time to these cases against Tyson.   (Doc. 798 at 13.)  The Court has been provided with thousands of pages to document the hours worked by Plaintiffs' counsel.  Clearly, the Court cannot

---

[5] This calculation is based on the hours for which the Plaintiffs submitted records.   Multiplied by the rates Plaintiffs' counsel requested, the total attorney fees sought amount to more than $1.5 million.  (*See* Doc. 798 at 15, *as amended by* Doc. 815 at 1.)

"feasibly and expeditiously" engage in an hour-by-hour review of such a fee application. *See Loranger*, 10 F.3d at 783 (affirming the district court and finding that an across the board cut in the hours worked was appropriate in a case where a single timekeeper sought to recover for nearly 3,000 hours of work).

> As to the work performed, compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorneys' fees.

*Webster Greenthumb Co. v. Fulton County, Ga.*,  112 F. Supp. 2d 1339, 1350 (N.D. Ga. 2000) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 573 n. 6(1986) (allowing compensation for productive attorney discussions and strategy conferences); *Webb v. Board of Ed.*, 471 U.S. 234, 243(allowing compensation for pre-litigation services in preparation of suit); *Cruz v. Hauck*, 762 F.2d 1230, 1233-34 (5th Cir.1985) (allowing compensation for preparing and litigating fee request); *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir.1985) (holding that measures to enforce judgment are compensable); *New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136, 1146 & n. 5 (2d Cir.1983) (allowing compensation for background research and reading in complex cases); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1321, 1348 (E.D.N.Y.1985) (compensating routine activities such as telephone calls

10

or reading mail that contribute to the litigation)).

As with attorneys' work, the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney. *Missouri v. Jenkins*, 491 U.S. 274, 285(1989); *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988).

A computation of the hours reasonably expended should not include time spent on "discrete and unsuccessful" claims, *Duckworth v. Whisenant* (11th Cir.1996), but should include time spent on all claims that arise out of the same course of conduct and share a "common core of facts," even if a specific individual claim did not succeed. *Hensley*, 461 U.S. at 435; *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir.1991); *Jean v. Nelson*, 863 F.2d 759, 771 (11th Cir.1988); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir.1987); *Military Circle Pet Ctr. No. 94 v. Cobb County*, 734 F.Supp. 502, 504 (N.D. Ga.1990).

The Eleventh Circuit has taken an expansive view in determining whether claims are related by a common core of facts. *See Popham*, 820 F.2d at 1579 ("Because plaintiff's counsel is required to 'explore every aspect of the case, develop all the evidence and present it to the court,' courts have expansively treated claims as being related.") (citations omitted). A court also should not discount an attorneys' fee award based on the court's rejection of an alternative legal ground when one of

11

the grounds is accepted. As the Supreme Court has stated:

> Where the plaintiff has failed to prevail on a claim that is distinct
> in all respects from his successful claims, the hours spent on the
> unsuccessful claim should be excluded in considering the amount
> of a reasonable fee. Where a lawsuit consists of related claims, a
> plaintiff who has won substantial relief should not have his
> attorney's fee reduced simply because the district court did not
> adopt each contention raised.

*Hensley*, 461 U.S. at 441.

Looking to these principles, the Court turns to the Defendant's categorical objections to the hours expended by Plaintiffs' counsel. Specifically, Tyson challenges: (1) time spent on the unsuccessful collective action and the Section 203(o) opposition; (2) time spent performing appellate work; (3) fees claimed before any of the Plaintiffs had retained Plaintiffs' counsel; (4) time spent on clerical tasks; (5) time that is redundant; (6) "untimely" claims by several timekeepers; and (7) vaguely described entries.

a.   Time spent on unsuccessful aspects of the case: the
collective action and Section 203(o) opposition

First, Tyson declares that "[b]ecause plaintiffs did not succeed on their collective-action claim, *any* time spent prosecuting it is properly excluded." (Doc. 802 at 9) (emphasis in orginal).   To support its argument, Tyson directs the Court's attention to *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494-1495 (11th Cir.

12

1994), *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1352 (S.D. Fla. 2007), and *Hatfield v. Oak Hill Banks*, 222 F. Supp. 2d 988, 993 (S.D. Ohio 2002).

However, these case citations generally do not support Tyson's contention that all fees related to the collective action should be excluded merely because they were unsuccessful. The court in *Cullens* did not rule that all time spent on pursuing a class action was not compensable when the plaintiffs failed to certify a class and then later entered into a consent decree. *Id.* at 1495. Instead, the court agreed with the district court's holding that the plaintiffs were not a "prevailing party" for purposes of 42 U.S.C. § 1988. *Id.* In *James*, the district court decided to exclude hours spent on an unsuccessful FLSA overtime claim because it found that the claim was "easily distinguishable" from a minimum wage claim, since the hours claimed related to an appeal of the unsuccessful claim only. 489 F. Supp. 2d at 1348. In *Hatfield*, the Court excluded only those claims "that were devoted solely to the pursuit of class claims [, but it did not exclude] any hours that were devoted to the class claims, but were intrinsically connected to the pursuit of the individual claims . . . ." 222 F. Supp. 2d at 993.

Tyson therefore mistakes the law when it concludes that all time spent on unsuccessful claims is *per se* uncompensable. Instead, time spent on unsuccessful claims is not compensable only if the unsuccessful claim does not arise out of the

same course of conduct, or concern the same "common core of facts." *See Hensley*, 461 U.S. at 435.  In other words, the claims must be "<u>discrete</u> and unsuccessful" in order for time spent on them to be properly excluded. *Duckworth v. Whisenant*, 97 F.3d, 1393, 1397 (11th Cir. 1996) (emphasis added).  Claims are discrete when they are "distinctly different," and "are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. Thus, where "the claims on which the plaintiff did not prevail and the claims on which he did prevail were 'distinctly different claims . . . based on different facts and legal theories,' the court cannot award any fee for services on the unsuccessful claims." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir.1987) (quoting *Hensley*, 461 U.S. at 434-35).

The Court finds that the collective action involved the same "common core of facts" as the individual actions upon which each of the Plaintiffs ultimately prevailed. Even with respect to time spent in regards to non-Albertville plants (a designation which Plaintiffs' counsel rejects, noting that the discovery pertained to general record-keeping practices (Doc. 813 at 26)), the Court cannot say that the attempt to pursue a collective action was "distinctly different" and "based on different facts and legal theories," *Popham*, 820 F.2d at 1578, from the claims on which each Plaintiff

14

prevailed.[6]

Whether these cases were maintained as individual actions or collective actions, the claim and defenses involved identical core facts and legal theories. Regardless of the ultimate outcome of the collective action, the Plaintiffs would have been required to prove that Tyson "engaged in the practice of inducing, permitting, or requiring its employees to work 'off-the-clock' in excess of 40 hours in a work week without recording the time for all work performed or compensating them with appropriate payment for such work." (Doc. 1.)

Thus, while it cannot be disputed that the Plaintiffs failed to have the case certified as a collective action or that certain types of activities were found by this Court to be non-compensable, the Court will not reduce the lodestar amount purely on this basis, because it finds that hours spent seeking to have the case certified as a collective action and the application of Section 203(o) to discrete activities for which the Plaintiffs sought compensation are not "discrete" from the Plaintiffs' singular claim.

Additionally, the record before the Court indicates that, in any event, Plaintiffs'

---

[6] Plaintiffs correctly note that each of them only had one claim–that Tyson's "mastercard line time" wage system violated the Fair Labor Standards Act. All of the types of activities which this Court ruled were not compensable were merely aspects of the Plaintiffs' singular claim.

counsel expressly disavowed a substantial amount of the hours they spent in pursuing certification as a collective action.  In fact, Plaintiffs' counsel only claimed 30% of the hours, corresponding to the fact that Fox, Brothers, and Hatchett represented 3 out of 10 named representatives in the collective action.  (Docs. 799-2 to 799-8, Exs. 1-7; 814-2 to 814-5, Exs. 1-4.)

The same reasoning applies to Tyson's challenge to the 164 hours that the Plaintiffs' counsel spent litigating the so-called "section 3(o) defense."  (Doc. 802 at 11.)  29 U.S.C. § 203(o) provides "[i]n determining . . . the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement . . . ."  Tyson sought to apply its interpretation of Section 203(o) to the Plaintiffs' pre- and post-shift donning and doffing activities and a determination that Plaintiffs' donning and doffing during uncompensated meal periods were *de minimis* as a matter of law.  (Doc. 640 at 2.) The Court, reversing its previous Order that denied Tyson summary judgment on the Section 203(o) issues (Doc. 483), entered judgment in favor of Tyson on pre- and post-shift changing activities, but it otherwise denied Tyson's Motion to Reconsider. (Doc. 659 at 2.)  While it is true that Tyson's Section 203(o) defense reduced the

Plaintiffs' <u>damages</u>, as Plaintiffs recognize (*see* Doc. 813 at 21), this does not mean that the hours claimed related to Section 203(o) were not reasonably expended.

Furthermore, it cannot be said that the Section 203(o) defense was a "claim" upon which the Plaintiffs were not successful.  Tyson cites no authority for the proposition that a successful defense to <u>part</u> of a claim causes time spent on the claim to be excluded from compensation.  Perhaps this is because the Eleventh Circuit has made plainly contrary statements.  *See, e.g.*, *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1187 (11th Cir. 1983) ("The theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable contradicts the law of this circuit.").  Therefore, the Court finds that none of the hours dedicated to Section 203(o) issues is due to be excluded from the lodestar calculation.

> b.    Time spent for appellate work

Tyson next challenges work spent pursuing appeals in the Eleventh Circuit. Tyson contends that the work spent amounted to nearly 60 hours.  (*See* Doc. 802 at 12.)  Plaintiffs' counsel disputes this amount and contends that it spent only 35.7 hours pursuing the appeal.  (Doc. 813 at 39.)  For reasons discussed below, the Court finds that the time requested for appellate work[7] is not compensable.

---

[7] There were two interlocutory appeals in *Fox*.  However, Plaintiffs' counsel did not request compensation for time spent on those appeals.

Plaintiffs have provided this Court with email correspondence dated April 18, 2008, from the attorneys for Tyson indicating that all fees would be resolved in the district court, upon voluntary dismissal of the appeals in the Eleventh Circuit.  The e-mail states:

> In response to Ms. Berry's e-mail of April 15, 2008, we are prepared to confer with you regarding a procedure for addressing the <u>pending</u> fee petition in Fox.  In addition, we intend to withdraw the appeal in Brothers and Hatchett, and thus it would be timely, and would seem to make sense, to address the <u>pending</u> fee petitions in those cases on the same schedule as the one in Fox.  To that end, we propose that plaintiffs have 30 days to file a <u>brief</u> in support of their fee petitions, together with supporting declarations and contemporaneous time records and invoices for expenses.   If plaintiffs want more time than that, it would be acceptable to us.  We propose that defendant then have 30 days to file a response.  Plaintiffs could then have 14 days to file any reply brief.  If any new materials were filed with the reply brief, we would want to reserve the right to make another filing within 14 days addressing them, if we deem it necessary.  Please let us know if this proposal is acceptable and, if not, what different procedure you would propose and why.

(Doc. 814-3, Ex. A to Ex. 2 (emphasis supplied).)[8]

On May 21, 2008, Tyson  voluntarily dismissed its appeal under Rule 42(b) of the Rules of Appellate Procedure in an unopposed motion, noting to the Eleventh

---

[8] Fox filed his fee petition on April 14, 2008.  (99:1612, Doc. 790.)  Brothers filed her fee petition on December 4, 2007.  (06-4676, Doc. 177.)  Hatchett filed her fee petition on December 4, 2007.  (06-4677, Doc. 214.)  Thus, <u>all</u> <u>three</u> fee petitions were filed <u>prior</u> to the date of this email.

Circuit that "an appeal may be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the court." (Doc. 814-8, Ex. 7 at 1.)

Plaintiffs argue that Tyson's April 18, 2008, email amounts to an agreement that the *Brothers* and *Hatchett* appellate fees would be addressed in the district court. However, Tyson's email referred only to <u>pending</u> fee petitions. At the time of the email in question, there were no <u>pending</u> <u>appellate</u> fee petitions. Thus, Tyson's email cannot reasonably be construed as agreeing to have the district court resolve fees incurred for <u>appellate</u> work. Therefore, the Court declines to award fees for appellate work.

c.   <u>Fees before Fox, Brothers, and Hatchett retained Plaintiffs'</u>
<u>counsel</u>.

Next, Tyson disputes time that Plaintiffs' counsel spent prior to the time that Fox, Brothers, and Hatchett retained them as attorneys. (Doc. 802 at 12.) Tyson cites no authority for this proposition, but summarily concludes that all time spent prior to March 29, 1999, should be deducted. *Id.* This disputed time amounts to more than 207.4 hours.

Plaintiffs rely primarily on *Dowdell*, 698 F.2d 1181, for the proposition that attorneys may recover fees incurred before they were retained by clients in an individual case. *Dowdell* involved a class action (as opposed to the individual claims

at issue here) where the defendants challenged fees that counsel incurred prior to being retained by the named plaintiffs. *Id.* at 1188. The Eleventh Circuit deemed "disingenuous" the argument that counsel could not recover for fees incurred while investigating the facts of the case, "prior to the lawyer-client relationship." *Id.* The plaintiffs had spent significant time conducting an "on-site review of the black community" before selecting named plaintiffs and pursuing its class action. *Id.* The court found that "[t]he lawyer-client relationship may, therefore, be deemed to have been struck when negotiations were begun [with the community that eventually produced the individual plaintiffs]." *Id.*

The Court recognizes that, unlike counsel in *Dowdell*, here, counsel did not prevail in a collective action but only succeeded in three individual cases. However, the Court has already concluded that the time expended on efforts to have the case certified as a collective action is sufficiently related to the claim on which each individual plaintiff ultimately prevailed and should be included in the reasonable hours expended. Thus, the current facts are much more similar to *Dowdell* than Tyson asserts.

Furthermore, the Court's own review of the records indicates that Tyson made gross generalizations when Tyson concluded that none of the hours was related to the *Fox*, *Hatchett*, or *Brothers* cases. For example, the billing records of Roger K.

20

Doolittle state that he traveled to Albertville in February of 1999 to meet with Hatchett and Brothers and to work on gathering evidence. (Doc. 799-5, Ex. 4.) Christine Webber was investigating the poultry industry in July of 1998 and drafting the complaint as early as January of 1999. (Doc. 799-4, Ex. 3 at 42.) Thus, it is apparent that Plaintiffs' counsel was already performing essential factual and legal investigative work–work that they would have been required to do regardless of whether the action proceeded as a collective action or as individual actions–prior to their retention by Fox, Brothers, and Hatchett. The Court finds that the hours were reasonably expended.

d.   <u>Clerical time</u>

Next, the Court addresses Tyson's contention that "[c]lerical work is not compensable." (Doc. 802 at 13.) It claims that 378.6 hours which its expert designated as "clerical" should be entirely eliminated. (Doc. 802 at 13.)

In support of its argument, Tyson cites to *Johnson*, 488 F.2d at 717, and a host of district court cases. *Johnson*, the only circuit court case relied upon by Tyson, does not stand for Tyson's proposition. Instead, the *Johnson* court concluded:

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. <u>Such non-legal work may command a lesser rate</u>. Its

21

dollar value is not enhanced just because a lawyer does it.

488 F.2d 714, 717 (emphasis added); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 4 (1989) (quoting *Johnson* and noting that "non-legal work may command a lesser rate").   In another case cited by Tyson, *Miller v. Kentworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000), upon finding that "filing a summons and a complaint is not work traditionally performed by an attorney, but rather is clerical work," the court counted the hours as reasonable, but billed the hours at a reduced rate.  *Id.*   Plainly, "clerical" work that was performed by an attorney should not be <u>excluded</u> from the hours reasonably expended, though reimbursement for such work may be calculated based on a lower rate.

Thus, Tyson does not cite any authority, and this Court's own research has been unable to uncover any such authority, for the proposition that clerical time is *per se*  not compensable time, as Tyson claims.   Additionally, a substantial amount of time that Tyson's expert coded as "clerical" includes matters that only an attorney would perform.   For instance, Candis A. McGowan held a telephone conference with Roger Doolittle to prepare for depositions and regarding arrangements for travel. (Doc. 803-4, Ex. C at 54.)  This amounted to .2 hours of time.  Although a discussion of travel plans might be considered clerical, preparation for depositions is not  a clerical task.   The Court will not exclude an entire twelve-minute block of time

merely because the attorneys also discussed travel arrangements during their brief telephone conference.

However, some tasks that Tyson challenges as clerical are clearly not work that an attorney would perform and, further, the task is billed by a paralegal. A paralegal may be compensated <u>only</u> to the extent that he or she performs work that is "traditionally done by an attorney." *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 n.1 (5th Cir. 1980); *see also Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B. 1982) ("[Paralegal time is] separately recoverable only as part of a prevailing party's award for attorney's fees and expenses, and even then only to the extent that the paralegal performs work traditionally done by an attorney.") (citing *Jones* 630 F.2d at 325 n.1); *United States v. Certain Real Property*, No. 5:06-CV-1102-IPJ, Slip Op. at 25 (N.D. Ala. May 29, 2008) ("Hours spent on purely clerical or secretarial tasks are unrecoverable overhead expenses.").

In light of the above standard, the Court recognizes that Plaintiffs seek recovery for numerous clerical tasks that are not compensable. For instance, E.M. Oullette billed time when she "Talked to Ace Federal re copies/disks of Tyson Depos." (Doc. 803-4, Ex. C at 54.) Oullette is a paralegal employed with Cohen, Milstein, Hausfield & Toll. (Doc. 799-4, Ex. 3 at 2.) In this instance, Oullette's work is merely administrative and is unrecoverable as an overhead expense. Indeed, a

significant amount of the challenged time involves work performed by a paralegal and not by an attorney and, upon the Court's review, much of the disputed time pertains to clerical tasks.   The Court finds that this time is not compensable. Additionally, Plaintiffs seek recovery for work performed by law clerks at Wiggins Childs and the Public Justice Center; the Court also finds that this time is not compensable. *See Certain Real Property*, No. 5:06-CV-01102-IPJ, Slip Op. at 23 n. 12 (N.D. Ala. May 29, 2008) (noting that several timekeepers appear to be summer law clerks and concluding that "[t]he claimants are not entitled to recover these amounts as they are ordinarily absorbed in the firm's overhead").   In light of the above, the Court will deduct an appropriate percentage from Plaintiff's time in calculating the reasonable hours expended.   Further, as instructed by the *Johnson* court, the Court will apply a discounted rate to clerical tasks performed by attorneys.

### e.   Duplicative time

The dispute over duplicative time has largely been resolved.   As previously noted, Plaintiffs are not seeking to recover for 681.2 hours of time that Tyson has coded as "duplicative."   (Doc. 813 at 32.) The records indicated at some points that counsel sought to recover multiple times for time that it spent that benefitted all three plaintiffs.   The Plaintiffs have now correctly excluded this time from the hours they claim.   (*See* Doc. 815.)

Additionally, Tyson challenges time spent by attorneys Roger K. Doolittle and Jairus M. Gilden.  (Doc. 802 at 14.)  It argues that these attorneys made no distinct contribution to the individual cases and that they should therefore be excluded.  *Id.* Because, as Tyson argues, the attorneys did not substantially participate in advancing the claims, this time is "redundant."  *Id.* at 14.

A reduction for redundant hours "is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *ACLU of Ga.,* 168 F.3d at 432 (quoting *Johnson v. University College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.1983)). Additionally, "a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Id.*

Upon review of the records of both these attorneys, the Court finds that Tyson's objection is without merit.  The records of both are sufficient for the Court to find that they each provided distinct contributions to the case.  Ultimately, this case was extremely complicated, made so in many ways by the litigation tactics of Tyson, which itself employed numerous attorneys in vigorously defending this matter.  Since

25

additional assistance was needed from other attorneys due to Tyson's own vigorous defense, Tyson cannot now claim that the time spent was excessive. *See City of Huntsville v. Proliance Energy, LLC*, No. 02-CV-HS-1296-NE (N.D. Ala. Jul. 1, 2005) (attached as an exhibit to the Defendant's opposition and noting that "active participation in trial [is] not an accurate measure of the value of the attorneys' presence.") *Id.* at 6.

f. <u>"Untimely" fee petitions</u>

Tyson contends that Attorneys Kuykendall, Middlebrooks, Heldman, Hodge, and Grimsley submitted untimely fee applications because the three "original motions" did not seek fees for them. (Doc. 802 at 15.) This contention is simply not accurate. The above-mentioned attorneys were included in the original fee petitions, although they were included only in a footnote. (*See, e.g.*, *Fox*, Doc. 790 at 2 n. 1) ("Attorneys from Ms. McGowan's former law firm, Gardner, Middlebrooks, also has time attributable to this case for Frederick T. Kuykendall, S.C. Middlebrooks, Sam Heldman, David Hodge, and D.W. Grimsley of approximately 51.45 hours. These attorneys may seek these hours in a later pleading to the extent attributable to M.H. Fox's claim."). These attorneys were included in the original timely fee petitions "pending" at the time of Tyson's counsel's email (discussed *supra* at 18). The attorneys' later supplementation of the record was also timely under this Court's

26

scheduling Order (Doc. 795), which adopted the schedule <u>jointly</u> proposed by all parties.   Therefore, the Court finds that these attorneys were included in the "pending" fee petitions and that their claims were timely.  The Court will not deduct this time from the reasonable number of hours expended in pursuing this litigation.

g.   <u>Cryptic Time Entries</u>

Tyson also challenges 1,882.72 hours that it designates as "cryptic." (Doc. 802 at 16.)  Tyson asserts that the descriptions for the work performed in these hours pertain only to "vague task descriptions that prevent the defendant or the Court from determining the nature of the work." (Doc. 802 at 16.)

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours, [and] fee counsel should [maintain] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437 n. 12).   "'[W]here that party presents inadequate documentation the court may determine a reasonable award based on its own experience.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (quoting *Mills by Mills*, 118 F.3d at 734).

Here, the Court finds that the Plaintiffs' counsel have provided adequate

27

documentation.  The Court's own review of tasks Tyson designated as "cryptic" time entries reveals very few entries that are insufficiently detailed such that the Court cannot determine whether the time was reasonably spent.  Tyson codes as cryptic many entries that contain more than ample support for the time claimed.  For instance, one entry coded as cryptic reads: "Telephone conference with SCM re: complaint; Telephone conference with Roger Doolittle–left message: Review of Complaint." (Doc. 803-14, Ex. C to Ex. N at 6.)  Plaintiffs' counsel cannot be expected to write an entire paragraph as to each and every task completed.  Entries such as those quoted above are not cryptic.

However, this does not mean that Tyson's objection is not entirely without merit.  Some entries do lack adequate detail.  For instance, Christine Webber and others claimed time for a "Conference call with co-counsel." (*Id.*)  Entries such as these do not provide sufficient detail for the Court to determine whether such fees are reasonable.  However, the vast majority of the so-called cryptic tasks are adequately detailed.  Thus, in calculating its reduction in the hours reasonably expended, the Court will deduct those hours it finds to be inadequately described.

h.   Summary of Reasonable Hours Expended

In reviewing the Plaintiffs' fee petitions, the Court has determined that hours claimed for pursuing appeals in *Hatchett* and *Brothers*, clerical tasks performed by

28

paralegals, work performed by law clerks, and inadequately described time entries are not compensable. Accordingly, in its discretion, the Court finds that a 5% reduction in the hours requested by Plaintiffs is sufficient to account for these deficiencies in the fee petition in light of the total hours claimed. There is ample support for the Court's reduction of the total hours based on a percentage rather than a line-by-line analysis, since the records are voluminous. *See, e.g.*, *Villano*, 254 F.3d at 1311 (affirming the district court's 25% across the board reduction when a large part of the hours were "too vague to discern the reasonableness and legitimacy" but the records supporting 569.30 hours claimed were so voluminous that the Eleventh Circuit "[did] not expect the district court or the magistrate judge to conduct an hour-by-hour analysis in this case").

Based on the above findings and reasoning, the Court concludes that the following hours were reasonably expended by the attorneys for Fox, Hatchett, and Brothers for purposes of arriving at the lodestar.

### Wiggins Childs Quinn & Pantazis

| | |
|---|---|
| Robert L. Wiggins, Jr. | 672.22 |
| Robert F. Childs, Jr. | 26.13 |
| Candis A. McGowan | 756.39 |
| Ann K. Wiggins | 41.56 |
| Herman N. Johnson, Jr. | 2.85 |
| Jake A. Kiser | 10.15 |
| Paralegals | 440.27 |

**Gardner Middlebrooks & Saxon**[9]

| | |
|---|---|
| Candis A. McGowan | 106.93 |
| S.C. Middlebrooks | 8.17 |
| D.W. Grimsley | 22.18 |
| Sam Heldman | 2.38 |
| David Hodge | 6.75 |
| Frederick T. Kukendall | 9.41 |

**Cohen, Milstein, Hausfield, Sellers & Toll**

| | |
|---|---|
| Joseph M. Sellers | 228.44 |
| Christine E. Webber | 625.025 |
| Charles E. Tompkins | 593.77 |
| Sahar Aziz | 41.14 |
| Michelle Exline | 36.65 |
| Paralegals | 493.52 |

| | |
|---|---|
| **Roger K. Doolittle** | 41.33 |

**Karmel & Gilden**

| | |
|---|---|
| Jairus M. Gilden | 63.33 |
| Jonathan Karmel | 0.57 |

**Public Justice Center**

| | |
|---|---|
| Debra Gardner | 46.43 |
| Deborah Eisenberg | 25.64 |
| Tara Andrews | 20.41 |
| Jonathan Smith | 3.82 |
| Marc Steinberg | 1.71 |

Having established the reasonable hours expended in pursuing these claims,

---

[9] Candis A. McGowan's former firm.

the Court now turns to its determination of the reasonable hourly rate(s).

2.     *Reasonable Hourly Rate*

The Plaintiffs are entitled to have their attorneys compensated at a reasonable hourly rate, which is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman*, 836 F.2d at 1299). Establishing the market rate is the plaintiff's burden, which must be done by "satisfactory evidence." *Norman*, 836 F.2d at 1299. "Satisfactory evidence" means "more than the affidavit of the attorney performing the work." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).  "The rate of attorney's fees is that of the place where the case is filed." *Cullens v. Ga. Dept. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) (citing *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983)); *see also Barnes*, 168 F.3d at 437 (finding that a district court "clearly erred" in awarding non-local rates and noting  that if "a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims").

"A prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." *Barnes*, 168 F.3d at 437.

31

"[F]ee counsel should [maintain] records to show the time spent on the different claims, and the general subject matter of the time expenditures [should be] set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. If the party submits inadequate documentation, the district court may reduce the amount of the award. *See id*.

In making its determination as to the reasonable hourly rate, the Court is also guided by the *Johnson* factors, which are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19; *Neptune Designs, Inc.*, 469 F.3d at 1359 n. 1.

In support of their fee petition, Plaintiffs' counsel submits the affidavits of three local attorneys, Joe R. Whatley, Jr., William J. Baxley, and Bruce R. Rogers. (Docs. 799-8 to 799-10, Exs. 7-9.) Besides these affidavits, several of the primary attorneys attest to the reasonableness of their own firm's fees. (Doc. 799-2 to 799-7,

Exs. 1-6.)  The Court first turns to the affidavits of the three local attorneys.

The proposed rates are based on a national market.  The affidavits establish that there is "a lack of attorneys practicing [in the Northern District of Alabama] who are willing and able to handle the claims of the type litigated here." *Barnes*, 168 F.3d at 437; *see also* (Doc. 799-8, Ex. 7 at 5 ("In my opinion [Joe Whatley], the market for attorneys in cases like this one is a national market."), ¶ b ("Few, if any, other plaintiffs firms in Alabama are willing or able to fund such litigation over such a long period of time."); Doc. 799-9, Ex. 8, ¶ b (same); Doc. 799-10, Ex. 9, ¶ b (same).  However, the affidavits testify only as to the skill of the attorneys at the firm of Wiggins, Childs, Quinn & Pantazis, LLC, and not as to the skill of Plaintiffs' other attorneys.

The affidavits submitted by Plaintiffs' counsel themselves are not particularly helpful in establishing what the prevailing rates should be in the instant case.  For example, Christine Webber, who provided the affidavit for the lawyers at Cohen Hausfield (Doc. 799-5, Ex. 4), only averred that the requested rates were in line with what the firm customarily charged its clients.  *Id.* at 5.  The Declaration of Debra Gardner of the Public Trust Center avers that the fees of its employees were those customarily claimed by such employees.  (Doc. 799-7, Ex. 6, ¶ 6.)  Attached to Ms. Gardner's Declaration are the guidelines provided by the United States District Court

for the District of Maryland.  (*Id.* at Ex. A to Ex. 6.)

The affidavit of Robert L. Wiggins, Jr., (Doc. 799-2, Ex. 1) provides perhaps the most extensive explanation for the reasonableness of the fee. Wiggins maintains that the rates of his law firm are based on the local market rate for similar cases, but further avers that plaintiffs cannot obtain service in the relevant local market, because "[r]epresentation for FLSA plaintiffs has been relatively unavailable in the local market." (Doc. 799-1, Ex.1at 6.)   To the extent that Wiggins also seeks to base his rate on a national market, such a rate is appropriate because local counsel is difficult to obtain.  *See Turner v. Secretary of Air Force*, 944 F.2d 804, 809 (11th Cir. 1991).

However, due to the insufficiency of the other evidence, the Court cannot simply accept Wiggins's affidavit at face value.  Wiggins himself can only point to a $450.00 hourly rate that was awarded to him in *Dixon v. Safelite Glass Corp.*, No. 91-C-1750-S (N.D. Ala. Nov. 13, 2003) (Doc. 81.)  In reaching this award, the court did not conduct any analysis as to whether the fee was reasonable, but simply listed the $450 rate as a finding of fact.  *Id.* at 1.

Pursuant to the Eleventh Circuit's guidance, this Court must engage in a meaningful lodestar analysis in order to properly award attorneys' fees.  *See Moton v. Nathan & Nathan, P.C.*, No.  08-12337, 2008 WL 4747423 at *2 (11th Cir. Oct. 28, 2008) (reversing the district court in an FDCPA case awarding attorneys' fees

34

when the court did not articulate the basis for a reasonable hourly rate or engage in the lodestar analysis). Having previously been awarded $450.00 nearly five years ago, Wiggins provides no reason as to why his rate has now increased to $550, although the Court does recognize that Wiggins is a talented and successful lawyer.

However, despite the deficiencies in the declarations supporting the Plaintiffs' fee petitions, in exercising its discretion, the Court agrees with Wiggins's assertion that, at least as of the date these cases were filed–1999–"[t]here [were] very few attorneys in the local market who [were] willing to undertake representation of plaintiffs in wage and hour cases." (Doc. 799-2, Ex. 1, ¶ 12.) While Tyson has provided the Court with a list of more than 41 FLSA cases that were filed in this district between January 11, 2008, and July 11, 2008 (Doc. 804-6, Ex. T), this mere list of FLSA actions does not account for the extraordinary complexity of this litigation and the degree to which these cases were contested. Moreover, Tyson's list of FLSA cases filed in the Northern District of Alabama between 1999 and 2007 does not indicate which of the listed cases were litigated by local counsel on behalf of plaintiffs. (Doc. 804-6, Ex. U.) In light of these facts, the Court believes that only a larger, national firm would have been willing to undertake this case in 1999 and that only a larger, national firm could successfully prosecute this case. Thus, the Court finds that the requested rates may be justified through reference to a national market.

Of course, Tyson suggests that substantially lower rates would be reasonable as to Plaintiffs' counsel. It submits the affidavits of three Birmingham attorneys who profess to have knowledge of the reasonable hourly rate. (Docs. 804-10 to 804-12, Exs. V, W, X.) These affidavits represent the opinions of attorneys who primarily perform labor and employment work <u>on the defense side of the bar</u> at established Birmingham law firms.

The Eleventh Circuit has indicated that comparisons between established firms with "long-standing relationships with business clients" and counsel for a plaintiff may be improper. *Norman*, 836 F.2d at 1305 ("While it is no doubt true that law firms of established lineage and reputation can charge substantial fees, that is not really the question. If the old-line firms are primarily engaged in insurance defense work, for example, their fees will probably be low—billing rates for this kind of work seem almost universally below the average. Further, long-standing relationships with business clients may cause the rates to be depressed."). The affidavits of Tyson's three local attorneys, John W. Hargrove, David J. Middlebrooks, and J. Fredric Ingram, offer only limited guidance to the court because each attorney primarily represents employers in labor and employment matters. (Docs. 804-10 to 804-12, Exs. V, W, X.) Thus, as stated in *Norman*, their long-standing relationships may cause their billing rates to be depressed in comparison to counsel for plaintiffs in

36

labor and employment matters.  These attorneys  each suggested that a reasonable hourly rate for even the most experienced and skilled attorneys should be capped at between $350 and $385.  *Id.*  However, none of these affiants attest to the appropriate rates of anyone other than the attorneys at Wiggins Childs.  *Id.*  Therefore, these documents, too, are incomplete.

In light of the inadequate guidance provided by both parties, the Court uses its own expertise in order to reach the appropriate hourly rate.  In reaching this rate, the Court considered the experience and reputation of the attorneys, as attested to by the affidavits and declarations, the customary fees, the evidence provided by both sides as to the reasonable hourly rate, and the Court's own review of previous fee awards.  Additionally, the Court notes that this case has been extremely complicated and lengthy, requiring the skills of highly qualified attorneys, due in no small part to the vigorous defense provided by Tyson's attorneys and the existence of questions of unsettled–and evolving–law.   In light of these factors, the Court finds that the following amounts are reasonable rates:

### Wiggins Childs Quinn & Pantazis

| | |
|---|---|
| Robert L. Wiggins, Jr. | $550 |
| Robert F. Childs, Jr. | $550 |
| Candis A. McGowan | $400 |
| Ann K. Wiggins | $400 |
| Herman N. Johnson, Jr. | $350 |

| | |
|---|---|
| Jake A. Kiser | $200 |
| Paralegals | $110 |

**Gardner Middlebrooks & Saxon**[10]

| | |
|---|---|
| S.C. Middlebrooks | $400 |
| D.W. Grimsley | $250 |
| Sam Heldman | $375 |
| David Hodge | $250 |
| Frederick T. Kukendall | $400 |

**Cohen, Milstein, Hausfield, Sellers & Toll**

| | |
|---|---|
| Joseph M. Sellers | $550 |
| Christine E. Webber | $400 |
| Charles E. Tompkins | $350 |
| Sahar Aziz | $220 |
| Michelle Exline | $140 |
| Paralegals | $110 |

**Roger K. Doolittle**          $200[11]

**Karmel & Gilden**

| | |
|---|---|
| Jairus M. Gilden | $400 |

---

[10]  Candis A. McGowan's former firm.

[11]  There is no evidence in the record establishing any of Roger Doolittle's prior experience or expertise.  The only reference to such matters is Plaintiff's reply brief, which states that Doolittle has practiced law between 28 and 36 years. Since Doolittle bears the burden of establishing a reasonable hourly rate and has entirely failed to meet this burden, the Court establishes his rate at a level that it deems minimal for an attorney in such a complex matter.

Jonathan Karmel                    $200[12]

**Public Justice Center**

Debra Gardner                      $400
Deborah Eisenberg                  $350
Tara Andrews                       $200[13]
Jonathan Smith                     $250
Marc Steinberg                     $200[14]

      c.    <u>Lodestar Calculation</u>

Multiplying the hours reasonably expended by the reasonable hourly rates, the

Court finds that the following amounts represent the lodestar calculation.[15]

**Wiggins Childs Quinn & Pantazis**

Robert L. Wiggins, Jr.            $369,721.00
Robert F. Childs, Jr.             $14,371.50

---

[12] Similar to Roger K. Doolittle, there is no evidence establishing the experience of Jonathan Karmel. Thus, the Court sets Karmel's rate at the minimum amount it believes is reasonable for an attorney in such a complicated case.

[13] The Public Justice Center only supplied information about the qualifications of those attorneys who were "principally involved in this litigation." (Doc. 814-4, Ex. 4.) Having failed to produce any documentation of the qualifications of Andrews, the Court applies the minimal rate.

[14] Again, the Public Justice Center does not provide any information regarding the qualifications of its attorney Steinberg. Accordingly, the Court applied the minimal rate.

[15] In determining the lodestar calculation, the Court discounted the "reasonable hourly rates" as to any time spent by an attorney performing merely "clerical" tasks.

| | |
|---|---|
| Candis A. McGowan | $302,556.00 |
| Ann. K. Wiggins | $16,624.00 |
| Herman N. Johnson, Jr. | $997.50 |
| Jake A. Kiser | $2,030.00 |
| Paralegals | $48,429.70 |

Subtotal:   $754,729.70

## Gardner Middlebrooks & Saxon

| | |
|---|---|
| Candis A. McGowan | $42,772.00 |
| S.C. Middlebrooks | $3268.00 |
| D.W. Grimsley | $5,545.00 |
| Sam Heldman | $892.50 |
| David Hodge | $1,687.50 |
| Frederick T. Kukendall | $3,764.00 |

Subtotal:   $57,929.00

## Cohen, Milstein, Hausfield, Sellers & Toll

| | |
|---|---|
| Joseph M. Sellers | $125,642.00 |
| Christine E. Webber | $250,010.00 |
| Charles E. Tompkins | $207,819.50 |
| Sahar Aziz | $9,050.80 |
| Michelle Exline | $5,131.00 |
| Paralegals | $54,287.20 |

Subtotal:   $651,940.50

## Roger K. Doolittle                     $8,266.00

## Karmel & Gilden

| | |
|---|---|
| Jairus M. Gilden | $25,332.00 |
| Jonathan Karmel | $114.00 |

Subtotal:     $25,446.00

**Public Justice Center**

Debra Gardner              $18,572.00
Deborah Eisenberg          $8,974.00
Tara Andrews               $4,082.00
Jonathan Smith             $955.00
Marc Steinberg             $342.00

Subtotal:     $32,925.00

**TOTAL LODESTAR AMOUNT:**   $1,531,236.20

## C.     Adjustments to the Lodestar

"After determining the lodestar amount as above, the court is entitled to adjust the amount of final fees awarded in light of the results obtained through the litigation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (citing *Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1302). "If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 435).

The Eleventh Circuit provided the Court with particularly meaningful guidance in *Norman* when it wrote:

If the result was partial or limited success, then the lodestar must

41

> be reduced to an amount that is not excessive. *Hensley*, 461 U.S. at 436-37, 103 S.Ct. at 1941. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. *Id.* A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Id.* at 435, 440, 103 S.Ct. at 1943. Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. *Popham*, 820 F.2d at 1578. It is improper to make the reduction based on a simple ratio of successful issues to issues raised.

836 at 1302.  In accordance with the Eleventh Circuit's guidance in *Norman*, the Court looks to the scope of the litigation as a whole, focusing on the significance of the overall results achieved in light of the substantial hours expended in pursuing this case.

Counsel for the Plaintiffs would have this Court believe that it obtained an "excellent" result and that they are therefore entitled to the entire lodestar amount. (Doc. 799 at 13; 813 at 54-56.)  Tyson, on the other hand, argues that the Plaintiffs had very limited success and that counsel should be compensated accordingly. (Doc. 802 at 27-31).  The Court believes that a reduction in the lodestar is due, given the ultimate results obtained and the reasonable hours expended.

First, contrary to Plaintiffs' counsel's argument, cases brought under the FLSA are not "civil rights" cases, although the Court does borrow from Section 1988 in awarding attorneys' fees.  In prior cases, the Supreme Court has held that "Congress

has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff . . . .'" *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (quoting *Hensley*, 461 U.S. at 444, n. 4).  However, there is nothing inherent in FLSA cases that "secure[] important social benefits that are not reflected in nominal or relatively small damages awards." *Id.*

Plaintiffs cite no authority for the proposition that awards in FLSA cases should be treated under the same rubric as a civil rights case when looking to the results obtained.  Furthermore, this Court's own research has uncovered only one district court case in which the court recognized that the FLSA was analogous to civil rights statutes for purposes of adjusting the lodestar.  *Perez v. Carey Intern., Inc.*, No. 06-22225-CIV, 2008 WL 4490750 at *14 (S.D. Fla. Sept. 26, 2008) ("I also recognize the strong public interest served by the private enforcement of the FLSA and other civil rights laws and the role served by attorney fee awards to ensure the private enforcement of these laws.").  Indeed, courts in other circuits have recognized that civil rights laws are "laws with a unique background and history of interpretation, which cannot be generalized to other statutes authorizing the award of fees." *Stomper v. Amalgamated Transit Union, Local 241*, 27 F.3d 316, 318 (7th Cir.1994). Therefore, the Court does not find that important rights bearing a non-monetary value

43

have been vindicated as a result of this lawsuit.

However, the Court does recognize that "[t]he purpose of the fee provision of the FLSA is to 'insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'"  Alba Conte, *Attorney Fee Awards* § 11: 10 (3d ed. 2004) (quoting *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984).  Attorneys' fees may be necessary to encourage plaintiffs to protect rights that have a lower monetary value, such as wage and overtime cases, but this does not mean that the same intrinsic social values are at stake in FLSA cases as in civil rights cases.

Ultimately, in comparison to what they initially sought to achieve, Plaintiffs' success was only modest at best.  The Plaintiffs initiated this action as a collective action brought under the FLSA.  (Doc. 1.)  Fox, Brothers, and Hatchett represented three out of eleven plaintiffs (later reduced to ten) who sought to vindicate the rights of all others similarly situated.  *Id.*  Although the Plaintiffs did not specify an exact amount in their prayer for relief, it was estimated that Tyson could be liable for up to six hundred million dollars.  (Doc.  803-6, Ex. E.)  Ultimately, the Court found that a collective action was not appropriate.  (Doc. 601.)  Counsel for the Plaintiffs failed to secure their hoped-for success when the case was not certified as a collective

44

action.

In the individual trials that ensued, Plaintiffs again only had modest success. Brothers sought total damages in the amount of $9,372.30. (Doc 674.) Fox sought $8,439.86 in total damages (Doc. 655) and Hatchett sought $6,151.94 in total damages (Doc. 690.)  The Court entered judgment in favor of Fox in the amount of $2,265.74.  (Doc. 789.)  After jury trials, final judgment was entered in favor of Hatchett in the amount of $1,723.46 (*Hatchett*, Doc. 223)  and in favor of Brothers in the amount of $948.00 (*Brothers*, Doc. 186).  All told, the Plaintiffs collectively recovered $4,937.20, or roughly 21% of the aggregate damages they sought to recover.  Compared to the grand scale at which this litigation began, Plaintiffs recovered a sum that was only a minute fraction of the original amount they sought.

Plaintiffs direct this Court's attention to the Supreme Court's decision in *City of Riverdale* and ask that it decline to look at the proportionality of the award in looking to the results obtained.  (Doc. 813 at 56.)  However, this argument relies on a fundamental assumption that the instant FLSA cases are analogous to the civil rights secured by Section 1983 at stake in *City of Riverdale*. *See* 477 U.S. at 576 ("A rule that limits attorneys' fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988. Congress enacted § 1988 specifically because it found that the private market for legal services

45

failed to provide many victims of civil rights violations with effective access to the judicial process."). As the Court already noted, the claims of Brothers, Hatchett, and Fox do not vindicate any rights that should be measured in terms of public good. Perhaps a collective action might have addressed the type of public right that the Court identified in *City of Riverdale*, but the Plaintiffs did not succeed in making this case a collective action, and they cannot now recover fees as though they had succeeded in maintaining this case as a collective action. To allow otherwise would permit a windfall for the Plaintiffs and would result in an unreasonably large fee.

In any event, the Court does not adopt a rule limiting attorneys' fees to proportional damages, as was rejected by *City of Riverdale*; instead, it reduces the lodestar sought by Plaintffs' counsel based in the comparatively small damages recovered in relation to the original relief sought, both individually (aggregated) and collectively. *See Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 558 (7th Cir. 1999) (reducing the lodestar in an FLSA case when fees were substantially larger than the plaintiff's recovery and noting that "although the fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court should consider when contemplating a reduction of the modified lodestar amount.") (citing *City of Riverdale*, 477 U.S. at 574).

However, Plaintiffs' counsel appropriately points out that Tyson furiously

litigated each of the cases, thereby causing a substantial increase in the hours reasonably expended on this matter. (Doc. 813 at 59.)  For example, although Tyson eventually dropped all its defenses except the *de minimis* defense prior to each trial, it only did so on a case by case basis, and then only <u>immediately</u> prior to the beginning of <u>each</u> trial.  Thus, Plaintiffs' counsel had to prepare for each trial on the assumption that Tyson would continue to assert every one of its defenses.[16]  Plaintiffs are not to be penalized for the fact that Tyson caused trial preparations to be so extensive.   On the other hand, Tyson ought not to be penalized for effectively narrowing the scope of this litigation through its vigorous defense.  Of course, a substantial part of the hours expended occurred after the collective action was dismissed; nearly forty percent (40%) of the time entries occurred after this Court denied the collective action.  (*See* Doc. 803-17, Ex. C to Ex. N.)  Thus, Plaintiffs' counsel fought very hard in prevailing for the three individual plaintiffs.[17]  Further,

---

[16]  The Court does not mean to imply that it thinks that Tyson had an obligation to drop any of its defenses.  Tyson had no such obligation.

[17]  Since the Court denied the Plaintiffs' Motion for Notice to potential collective action members, more than two years have passed and there have been more than two hundred entries into the docket.  Tyson moved for reconsideration of its Motion for Partial Summary Judgment (Doc. 640), but the Plaintiffs were appealing the Court's denial of a motion to intervene and to consolidate.  In short, both parties fought very hard to prevail in this case, and Plaintiffs are at least somewhat responsible for the extremely large number of hours consumed in pursuing these three individual claims.  The Court is of the opinion that both sides

the Court is of the opinion that both Tyson and Plaintiffs' counsel viewed these three cases as potential "test" cases for purposes of potentially clarifying, through the appellate process, issues of law that are evolving nationwide and in the Eleventh Circuit.

Despite the fact that Tyson contributed substantially to the very large lodestar sought for these three individual cases, in looking at the results obtained the Court cannot, in good conscience, find that the results obtained were "excellent" and award the full lodestar amount.  Instead, the Court finds that the results obtained justify a substantial reduction to the lodestar.  The lodestar should be reduced by fifty percent (50%).[18]   The Court believes this to be the maximum amount of a reasonable fee award, given the results obtained in this case.  Accordingly, Plaintiffs' counsel is due to be awarded the following amounts in attorneys' fees:

---

viewed these cases as potential test cases and litigated accordingly.  The Court respects the effort that both sides were willing to expend.

    [18]   In setting the reduction at fifty percent (50%), the Court has taken into consideration the fact that Plaintiffs' petition discounted all the time spent prior to the Court's opinion and order denying certification by seventy percent (70%).  Although the court has already determined that such time was spent on issues that were not "discrete" from the other issues in these cases, and therefore that such time is includable as hours reasonably incurred in the prosecution of these actions, if the Plaintiffs had not already discounted such time so heavily, the Court would have been inclined to reduce the lodestar by a percentage greater than the one it selected.

**Wiggins Childs Quinn & Pantazis**:        $377,364.85

**Gardner Middlebrooks & Saxon**:        $28,964.50

**Cohen, Milstein, Hausfield, Sellers & Toll**:        $325,970.25

**Roger K. Doolittle:**        $4,133.00

**Karmel & Gilden**:        $12,723.00

**Public Justice Center**:        $16,462.50

**TOTAL ATTORNEYS' FEES:**        $765,618.10

The Court believes that a fifty percent (50%) reduction is warranted and is in line with previous Eleventh Circuit decisions that have reduced the lodestar based on limited success. In *Andrews v. United States*, the Eleventh Circuit found that a district court abused its discretion when it did not consider limited success in determining whether to reduce the lodestar. 122 F.3d 1367, 1375-1376 (11th Cir. 1997). The plaintiffs in *Andrews* were due to receive attorneys' fees for prevailing on their CERCLA claims. However, the plaintiffs' CERLCA recovery amounted for only three percent (3%) of the total award, and it was only one percent of what the plaintiff sought initially. *Id.* The district court reduced the award by 78% only because 22% of the plaintiffs had prevailed on the CERCLA claims. *Id.* at 1376. Rejecting even this substantial reduction, the Eleventh Circuit wrote:

> [T]he district court did not consider that plaintiffs prevailed on

49

> only one of their three CERCLA claims and their monetary award
> on that claim was quite small. Instead, the district court awarded
> plaintiffs fees and costs totaling nearly four times the amount of
> their CERCLA award. Although the Supreme Court has "reject[ed]
> the proposition that fee awards . . . should necessarily be
> proportionate to the amount of damages a civil rights plaintiff
> actually recovers," *Riverside v. Rivera*, 477 U.S. 561, 574, 106
> S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986); *see also Cullens v.
> Georgia Dep't of Transp.*, 29 F.3d 1489, 1493 (11th Cir.1994)
> (discussing Riverside), this was not a civil rights action. As noted,
> the best-and perhaps only-measure of plaintiffs' success on their
> CERCLA claims was their monetary damages award.

*Id.* Accordingly, the court found that the district court had abused its discretion in

failing to consider the plaintiffs' minimal success. *Id.*

Although *Andrews* is not an identical case to the current ones, the Court does

find it to be more informative than the civil rights cases relied upon by the Plaintiffs.

The Court recognizes that there are important policy implications at stake in an award

of attorneys' fees under the FLSA (and under CERCLA) and that Congress has

authorized such fees in order to assure that private parties can enforce their rights, but

this fact alone does not mean that Plaintiffs are now entitled to all of the fees they

request in this case.

Ultimately, it was Tyson, and not the Plaintiffs, who succeeded in winning

almost every crucial issue in these cases, from the denial of the collective action to

the grant of partial summary judgment in favor of Tyson disposing of a significant

part of the Plaintiffs' damages through an interpretation of Section 203(o) that relied on newly developed law.   Although the Plaintiffs ultimately succeeded, they recovered only a small portion of the damages they initially sought, and the juries in the *Hatchett* and *Brothers* cases awarded significantly less than the damages they individually sought.   Unlike the plaintiffs in *Andrews*, in these three cases all of the Plaintiffs prevailed and 100% of their combined recovery was for violation of the FLSA.   Thus, as in *Andrews*, the Court finds that the limited nature of these Plaintiffs' recovery is perhaps the best measure of determining the Plaintiffs' success.   In fact, the Court believes that the total attorneys' fees awarded are quite generous, given the limited nature of the Plaintiffs' success.   Nevertheless, the Court awards these fees in recognition of at least a partial victory against a very determined adversary in an extremely complicated, lengthy and hard-fought case dealing with  an evolving area of the law.

### D.    Costs

The parties disagree as to whether *Glenn v. General Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988), limits this Court in awarding costs to those enumerated in 28 U.S.C. § 1920. (*See* Docs. 802 at 31; 813 at 62).  Since *Glenn* is central to the Court's determination of costs, a detailed discussion of that case is necessary.

In *Glenn*, the plaintiff prevailed in a case brought under the Equal Pay Act,

whose remedial provision, like that of the FLSA, is 29 U.S.C. § 216(b).  *Id.* at 1568.

Among other things, the defendant appealed the district court's award of costs, which

included expert witness fees.  *Id.* at 1574.  The plaintiff analogized between Section

216(b) and Section 1988, reasoning that the same rationale used for permitting

recovery of expert witness fees in civil rights cases should be applied to Section

216(b) because of the similarities between the Equal Pay Act and civil rights statutes.

*Id.*  However, the Eleventh Circuit looked to the then recent Supreme Court decision

in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987), and interpreted

that case to mean that "the district court erred in awarding expert witness fees because

Section 216(b) does not refer explicitly to them."  *Glenn*, 841 F.2d at 1574.

Counsel for Plaintiffs would have the Court stop reading the opinion here, and

conclude that *Glenn* "speaks <u>only</u> to the inability to recover expert witness fees."

(Doc. 813 at 62) (emphasis added).  However, the Eleventh Circuit's decision in

*Glenn* cast a much wider net than simply excluding expert witness fees.  Instead, the

court wrote:

> The broad language in *Crawford Fitting* indicates that, although a
> statute may shift attorney fees, the statute does not operate to shift
> witness fees unless the statute refers explicitly to witness fees. In
> the present case, Section 216(b) does not refer explicitly to witness
> fees. <u>In addition, nothing in the legislative history associated with
> Section 216(b)'s passage suggests that Congress intended the term
> "costs of the action" to differ from those costs as now enumerated</u>

> in 28 U.S.C.A. § 1920. Consequently, we hold that the district court erred in awarding expert witness fees in excess of the amount permitted by 28 U.S.C.A. § 1821 and 28 U.S.C.A. § 1920. We thus remand this case to the district court so it may tailor the award of expert witness fees in accordance with this opinion. On remand, the district court also must ensure that only those items permitted to be taxed as costs are included in the award of expenses and that the amount of the award attributable to each of those items falls within the statutory limit as to that amount.

*Id.* at 1575-1576 (emphasis added).  Clearly, the Eleventh Circuit did not limit its holding only to expert witness fees.  The court was explicit in noting that district courts should look to 28 U.S.C. § 1920 in awarding costs due under 29 U.S.C. § 216(b).

Plaintiffs' counsel cites no authority indicating that the Court should find otherwise.  While their reply brief cites a litany of cases that stand for the proposition that "non- § 1920 expenses are recoverable under § 1988" (Doc. 813 at 63-64 (relying heavily on *Dowdell*, 698 F.2d at 1188-89, and analogizing the fee-shifting provisions in the FLSA and the Civil Rights Attorney's Fees Act)), counsel fails to recognize that Section 1988 is not at issue in this fee petition.  In fact, the Eleventh Circuit in *Glenn* expressly refused to analogize between Section 1988 and Section 216(b) when it decided to exclude expert witness fees from the costs to be awarded.  *See* 841 F.2d at 1574.

Plaintiffs cite no authority that suggests that the Court can award costs other

than those listed in 28 U.S.C. § 1920.  All of the language from the cases relied upon by Plaintiffs' counsel in their reply brief are nothing more than paeans to the usefulness of fee-shifting provisions such as section 216(b); none of the cases suggests precisely which expenses are recoverable, and none of the cases represents mandatory authority for this Court.  (*See* Doc. 813 at 65-66 (quoting *Certilus v. Peeples*, No. 81-46-CIV-OC-12, 1984 WL 3192 at*3 (M.D. Fla. Dec. 4, 1984); *Perdomo v. Sears, Roebuck and Co.*, 1999 WL 1427752 at *6 (M.D. Fla. Dec. 3, 1999); *United Slate,* 732 F.2d at 502).).

The Court recognizes that an award of costs is mandatory under 29 U.S.C. § 216(b).  It also recognizes that the cost shifting provision is meant to encourage the pursuit of the rights to which it applies.  However, given the Eleventh Circuit's clear direction in *Glenn*, the Court finds that those costs are limited to those enumerated in 28 U.S.C. § 1920.

Section 1920, provides:

>A judge or clerk of any court of the United States may tax as costs the following:
>
>(1) Fees of the clerk and marshal;
>
>(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
>(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C.A. § 1920.

Upon its own review of the record, the Court finds that Plaintiffs are entitled to $9,554.31 in costs, as authorized by 28 U.S.C. § 1920.  This calculation deducts the vast majority of the $155,227.40 that counsel claims in expenses.  Such a substantial amount is deducted because the Court has included as compensable only expenses that are enumerated in Section 1920.  For instance, the firm of Wiggins Childs seeks to collect overtime for its staff, office supplies, and travel expenses. (Doc. 799-2, Ex. 1.)  Gardner, Middlebrooks & Saxon seeks costs for travel, meals, and lodging.  (Doc. 799-3, Ex. 2.)  Cohen, Milstein, Hausfield, Sellers & Toll seeks telephone charges and computer research expenses. (Doc. 799-4, Ex. 3.)    Thus, Plaintiffs clearly seek expenses that are well beyond the parameters authorized by Section 1920.  According to *Glenn*, the Court cannot allow Plaintiffs to recover for such costs.

One point requires further discussion from the Court, however.  Tyson seeks to exclude all expenses for photocopying.  (Doc. 802 at 31-32.)  Section 1920 allows recovery for, "the costs of making copies of any materials where the copies are necessarily obtained for use in the case."   Although the Court has not uncovered any Eleventh Circuit authority for this proposition, there is substantial authority from other district courts that counsel for the plaintiff bears the burden of providing adequate records which demonstrate the necessity of copying costs.  *See, e.g.*, *Johnson v. Mortham*, 173 F.R.D. 313, 319 (N.D. Fla. 1997) ("Simply making unsubstantiated claims that [documents or copies] were necessary is insufficient to permit recovery.") (quoting *Corsair Asset Mgmt., Inc. v. Moskovitz*, 142 F.R.D. 347, 352 (N.D. Ga. 1992); *Brewer-Giorgio v. Bergman*, 985 F. Supp. 1478, 1486 (N.D. Ga. 1997) ("Copies made solely for the convenience, preparation, research, or the records of counsel are not recoverable . . . . The party seeking recovery of photocopying costs must come forward with evidence showing the nature of the documents copied including how they were used or intended to be used in the case.") (internal citations and quotation marks omitted); *Ferguson v. Bombardier Services Corp.*, No. 8:03-CV-539-T-31-DAB, 2007 WL 601921 at *6 (M.D. Fla. Feb. 21, 2007) ("A prevailing party may not simply make unsubstantiated claims that such documents were necessary, since the prevailing party alone knows for what purpose

the copies were made.").  The Court finds that the majority of copying expenses claimed by Plaintiffs have not been properly substantiated.

The Court reviewed the requests for costs of each of the firms seeking recovery, and it found that the copying costs sought by Wiggins Childs are not properly documented.  These entries contain no detail beyond the most general description of the task.  For instance, the firm seeks to recover in an entry for "color copies." (Doc. 799-2, Ex. 1.)  By not providing any detail to its entries, neither Tyson nor the Court has any means of determining whether these copies were "necessarily obtained for use in the case."   The Court finds that the records submitted by Gardner Middlebrooks (Doc. 799-3, Ex. 2) contain sufficient detail for the Court to find that the copies were necessary for use in the case.[19]  Thus, the Court excluded the copying costs sought by Wiggins Childs but included the copying costs sought by Gardner Middlebrooks when calculating the recoverable photocopying costs.

The lump sum of costs in the amount of $9,554.31 is apportioned among the firms representing the plaintiffs in the following manner:

**Wiggins Childs Quinn & Pantazis:**             $4,256.07

**Gardner Middlebrooks:**             $5,063.74

**Public Justice Center:**             $64.50

---

[19]  No other firms sought recovery for photocopying expenses.

| | |
|---|---|
| **Cohen, Milstein, Hausfield, Sellers & Toll:** | $170.00 |
| **Roger K. Doolittle:** | $0.00 |
| **Karmel & Gilden:** | $0.00 |
| **TOTAL COSTS AWARDED**: | $9,554.31 |

Using the discretion afforded to a district court awarding costs due under Section 1920, *see Maris Distrib. Co. v. Annheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002), the Court finds that the above-described amounts are the "costs of the action," whose recovery is required under 29 U.S.C. § 216(b).

## V.    CONCLUSION

The Court finds that the Plaintiff's Motion for Attorneys Fees and Expenses is due to be **GRANTED**.  Consistent with the reasoning in this Memorandum Opinion, the Court finds that the following amounts are due to be awarded to the Plaintiffs as attorneys' fees and costs:

| | |
|---|---|
| **Total Attorneys' fees:** | $765,618.10 |
| **Total Costs:** | $9,554.31 |

An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this the 17th day of February, 2009.


**VIRGINIA EMERSON HOPKINS**
United States District Judge